KEVIN BLACKMON,
    *Petitioner*,

    v.

UNITED STATES OF AMERICA,
    *Respondent*.

No. 3:16-cv-1080 (VAB)

### RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Kevin Blackmon ("Petitioner") filed a successive petition for a writ of habeas corpus, moving to vacate, set aside, or correct his sentence, under 28 U.S.C. § 2255. Successive Motion to Vacate, Set Aside, or Correct Sentence, dated June 26, 2016 ("Pet'r's Mot."), ECF No. 1; *see also* Petitioner's Memorandum in Support of Motion, dated Aug. 4, 2017 ("Pet'r's Mem."), ECF No. 6.

Having awaited approval from the Second Circuit under 28 U.S.C. § 2244, and then delayed decision because of a stay entered by the Second Circuit, *see* Mandate Granting Motion to File Successive 28 U.S.C. § 2255 Motion, dated Aug. 10, 2016 ("Mandate"), ECF No. 5, the motion is now ripe for review.

For the reasons explained below, the Court **DENIES** Mr. Blackmon's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 and **DISMISSES** his petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Sentencing

On June 22, 1992, a federal grand jury returned an indictment against Mr. Blackmon, *inter alia*, on a charge of conspiracy to possess with intent to distribute cocaine, in violation of

21 U.S.C. §§ 846 and 841(a)(1). *See* Pet'r's Mot.; *see also* Judgment, *United States v. Blackmon*, dated Aug. 31, 1993, annexed as Ex. 1 to Petition, ECF 1-1.

On May 18, 1993, after a trial in the United States District Court for the District of Connecticut before United States District Judge Ellen Bree Burns, a jury convicted Mr. Blackmon of one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). *See* Judgment.

On August 31, 1993, under the then-mandatory United States Sentencing Guidelines ("Sentencing Guidelines"), Mr. Blackmon received a sentence of 292 months in prison, to be followed by five years of supervised release. *Id.*

Judge Burns determined that Mr. Blackmon was a "career offender" under Section 4B1.1 of the Sentencing Guidelines. Pet'r's Mem. at 2; Government's Amended Response to Motion ("Am. Resp."), dated Aug. 25, 2017, ECF No. 8 at 3. Mr. Blackmon had satisfied all three criteria for a "career offender" under the Sentencing Guidelines because he (1) was over eighteen years old at the time of his offense; (2) was convicted of a "controlled substance offense"; and (3) had two prior convictions for "crimes of violence": assault in the second degree with a firearm in October 1990, and manslaughter in the first degree in November 1990. *See* Pet'r's Mem at 1; U.S. SENTENCING COMM'N GUIDELINES MANUAL § 4B1.1 (eff. Nov. 1, 1992 to Oct. 31, 1993).

Because of this finding, Mr. Blackmon's criminal history category on the sentencing table increased by two levels, from IV to VI. As a result, Mr. Blackmon's Sentencing Guidelines range increased from 235-293 months to 292-365 months. *See* U.S. SENTENCING COMM'N GUIDELINES MANUAL § 5A (eff. Nov. 1, 1992 to Oct. 31, 1993). A sentence of 292 months thus was the lowest possible sentence under the then higher mandatory Guidelines range.

### B. Direct Appeal of Sentence

Mr. Blackmon appealed his "career offender" sentencing enhancement and argued that the Sentencing Commission did not have the "authority to promulgate Application Note 1." *United States v. Jackson*, 60 F.3d 128, 131 (2d Cir. 1995). He argued "that a prior drug conspiracy conviction [could not] be a predicate for career offender status[,]" but did not dispute that his prior convictions for manslaughter in the first degree and assault in the second degree with a firearm constituted crimes of violence. *See id.* at 130–31 ("In this case, Blackmon was over eighteen years of age and had two prior convictions, one for manslaughter and one for assault in the second degree with a firearm. As a result, he satisfied the first and third elements of § 4B1.1, a fact that Blackmon does not contest.").

On July 14, 1995, the Second Circuit upheld the Sentencing Commission's authority to issue the career offender provision and affirmed Mr. Blackmon's "enhanced sentence as a career offender." *Id.* at 133.

Mr. Blackmon then filed a petition for a writ of certiorari to the United States Supreme Court, which the Supreme Court denied. *Blackmon v. United States*, 516 U.S. 1130 (1996).

### C. Previous § 2255 Motion

On July 3, 1997, Mr. Blackmon filed his first motion to vacate his sentence under 28 U.S.C. § 2255. Pet'r's Mem. at 3, Am. Resp. at 6.

Later that year, Judge Burns denied that motion.[1]

---

[1] It is unclear from the record when Blackmon's first § 2255 motion was denied. In his brief, Blackmon says that Judge Burns denied his petition on November 4, 1997. Pet'r's Mem. at 3. In its brief, the Government claims the motion was denied "on or about August 22, 1997." Am. Resp. at 6. Because all parties agree that the motion was denied in 1997 and the precise date has no material impact on the instant motion's merits, further discussion of when Judge Burns denied the motion is unnecessary.

On April 13, 1998, Mr. Blackmon appealed the denial to the United States Court of Appeals for the Second Circuit. *See Blackmon v. United States*, No. 98-2333 (2d Cir. Apr. 13, 1998) (notice of appeal).

On February 16, 2000, the Second Circuit denied his motions to proceed *in forma pauperis,* for appointment of counsel, and for a certificate of appealability. *See Blackmon v. United States*, No. 98-2333 (2d Cir. Feb. 16, 2000) (order denying motions and dismissing appeal, and finding that "appellant has not made a 'substantial showing of the denial of a constitutional right.'") (citing 28 U.S.C. § 2253(c)(2)).

### D.  Current § 2255 Motion

On June 26, 2015, the United States Supreme Court decided *Johnson v. United States*, 135 S. Ct. 2551 (2015), invalidating the residual clause of the Armed Career Criminal Act, because it failed to give proper notice about the potential for increased sentencing and therefore was unconstitutionally vague. *Johnson*, 135 S. Ct. at 2551.

On April 18, 2016, the Supreme Court gave *Johnson* retroactive effect. *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016) ("*Johnson* announced a substantive rule that has retroactive effect in cases on collateral review.").

On June 26, 2016, Mr. Blackmon, represented by counsel, moved to vacate, set aside, or correct his sentence. Pet'r's Mot. at 1. The motion was assigned to this Court. Mr. Blackmon argued that, under *Johnson,* an identically worded residual clause[2] in the then applicable

---

[2] Under the 1992 Sentencing Guidelines, the career offender provision then applicable to Mr. Blackmon defined "crime of violence" as "any offense under federal or state law punishable by imprisonment for a term exceeding one year that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious physical risk of physical injury to another." U.S. Sentencing Comm'n Guidelines Manual § 4B1.2(1) (eff. Nov. 1, 1992 to Oct. 31, 1993). Subsection (i) is commonly referred to as the "force" clause or "elements" clause, the first phrase of (ii) is referred to as the "enumerated" clause, and the second phrase of (ii) is referred to as the "residual" clause. *United States v. Moore*, 916 F.3d 231, 236 (2d Cir. 2019). After

(Continued . . . )

Sentencing Guidelines' career offender definition is also unconstitutionally vague. Pet'r's Mem. at 4–5. Without that residual clause, he arguably would no longer qualify as a career offender and would therefore be entitled to a resentencing. *Id.* at 1–2. Because his motion was successive, Mr. Blackmon asked the Court to stay its proceedings until the Second Circuit granted his motion for leave to file a successive § 2255 motion. Pet'r's Mot. at 1; *see also* 28 U.S.C. § 2244(3) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.").

On August 10, 2016, the Second Circuit granted Mr. Blackmon leave to file his successive § 2255 motion, but directed the District Court to stay proceedings until the Supreme Court announced its decision in *Beckles v. United States*, 137 S. Ct. 886 (2017), which was scheduled for argument before the Supreme Court during the 2016-17 term.[3] *See* Mandate ("Petitioner moves for leave to file a successive 28 U.S.C. § 2255 motion. He argues that *Johnson v. United States*, 135 S. Ct 2551 (2015), has invalidated a certain provision of the United States Sentencing Guidelines, entitling him to a sentence reduction. Upon due consideration, it is hereby ORDERED that the motion is GRANTED.").

On March 6, 2017, the Supreme Court decided *Beckles*, holding that the residual clause of the advisory Sentencing Guidelines was not unconstitutionally vague because, unlike the

---

*Johnson*, the Sentencing Commission removed the residual clause from the Guidelines "as a matter of policy" because it "determined that the residual clause at § 4B1.2 implicates many of the same concerns cited by the Supreme Court in *Johnson*[.]" U.S. SENTENCING COMM'N GUIDELINES MANUAL, supp. to app. C, at 120–21 (Nov. 1, 2018) (describing reasons for removing residual clause through amendment 798, effective as of Aug. 1, 2016).

[3] The petitioner in *Beckles* sought to invalidate the residual clause in the current, advisory Guidelines' career offender definition under *Johnson*. *See* Order Granting Certiorari, *Beckles*, 137 S. Ct. 886 (No. 15-8544); *see also* Petition for Writ of Certiorari at 5, *Beckles,* 137 S. Ct. 886 (2017) (No. 15-8544), 2016 WL 3476563, at *i ("The questions presented are: 1. Whether *Johnson* applies retroactively to collateral cases challenging federal sentences enhanced under the residual clause in U.S.S.G. § 4B1.2(a)(2)? 2. Whether *Johnson*'s constitutional holding applies to the residual clause in U.S.S.G. § 4B1.2(a)(2), thereby rendering challenges to sentences enhanced under it cognizable under collateral review?").

mandatory minimum sentences in the ACCA, "the Guidelines advise sentencing courts on how to exercise their discretion within the bounds established by Congress [and t]he court relied on the career-offender Guideline merely for advice in exercising its discretion to choose a sentence within those statutory limits." *Beckles*, 137 S. Ct. at 895. Therefore, "the advisory Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause and . . . § 4B1.2(a)'s residual clause is not void for vagueness."[4] *Id.*

On August 4, 2017, Mr. Blackmon filed a memorandum of law in support of his motion, arguing that: (1) his prior convictions did not qualify as "crimes of violence," invalidating the career offender enhancement of his sentence; and (2) because he was sentenced before *Booker* made the Guidelines advisory and not mandatory, the residual clause was still liable to a vagueness challenge. Pet'r's Mem. at 10–14.

On August 25, 2017, the Government responded to Mr. Blackmon's motion, arguing that "[t]he mandatory guidelines are not subject to vagueness challenge under *Beckles*." Am. Resp. at 22. The Government argued, *inter alia*, that while the Supreme Court struck down the ACCA's residual clause, it did not strike down the Guidelines' residual clause, making Mr. Blackmon's petition premature to any substantive rule or "watershed rule of criminal procedure." *Id.* at 16, 21. The Government also argued that "Blackmon failed to satisfy the requirements on successive petitions in § 2255(h)(2)" and that he procedurally defaulted his vagueness challenge by failing to raise it at sentencing or on direct appeal. *Id.* at 12, 21. The Government also noted that it was

---

[4] While the entire Court agreed in the result, Justices Kennedy, Ginsburg, and Sotomayor filed concurrences. Justice Kennedy briefly noted that "vagueness" has a "well-established legal meaning" that "cannot be transported uncritically to the realm of judicial discretion in sentencing." *Beckles*, 137 S. Ct. at 897 (Kennedy, J., concurring). Justice Ginsburg would have decided the case more narrowly, on the grounds that Beckles' offense was specified as a "crime of violence" in the Sentencing Guidelines' commentary. *Id.* at 897–98 (Ginsburg, J., concurring). Justice Sotomayor agreed with Justice Ginsburg, but wrote separately to emphasize that the "the central role that the Guidelines play at sentencing" meant that "they should be susceptible to vagueness challenges under the Due Process Clause." *Id.* at 900 (Sotomayor, J., concurring).

seeking to obtain copies of the state court judgments of conviction so as to establish whether Mr. Blackmon was convicted of manslaughter in the first degree, CONN. GEN. STAT. § 53a-55, or manslaughter in the first degree with a firearm, CONN. GEN. STAT. § 53a-55a. *Id.* at 23 n.7 ("Blackmon's criminal records check (a relevant portion of which is appended hereto as Exhibit 1) would appear to reflect that he was convicted of manslaughter with a firearm in violation of 53a-55a . . . . While the Court may not rely on a rap sheet to establish the crime of conviction for these purposes, the Government is seeking to obtain the judgments or mittimus.") (citing State Police Record Check, dated Aug. 17, 2017, annexed as Ex. 1 to Am. Resp.).

On September 8, 2017, filed a supplemental response to Mr. Blackmon's motion under seal. Government's Supplemental Response to Mot., dated Sept. 8, 2017 ("Supp. Resp."), ECF No. 9. The Government submitted as exhibits in further support of its opposition to the petition two judgments mittimus[5] from the Connecticut Superior Court for Mr. Blackmon's 1992 convictions for manslaughter in the first degree and assault in the second degree with a firearm. *See* Judgment Mittimus, No. CR6-335376 JD (Conn. Super. Ct. Apr. 16, 1992), annexed to Supp. Resp., ECF No. 9-1, at 1 (hereafter, the "Manslaughter Judgment"); Judgment Mittimus, No. CR6-333362 JD, (Conn. Super. Ct. Apr. 16, 1992), annexed to Supp. Resp., ECF No. 9-1, at 2 (hereafter, the "Assault Judgment"). These documents, the Government explained, were obtained as part of its review of Mr. Blackmon's file from the Connecticut Department of Corrections. Supp. Resp. at 2.

---

[5] "In Connecticut, a 'mittimus is an official record of the conviction that is created by the court at the time of sentencing.' It is the state law equivalent of a judgment in a federal criminal case. In fact, it is often referred to as a 'judgment mittimus.'" *Deida v. United States*, No. 3:13-cv-1608 (SRU), 2017 WL 2661622, at *13 (D. Conn. Jun. 20, 2017) (quoting *Diaz v. United States*, Nos. 3:94-CR-26 (AVC) & 3:97-CV-719 (AVC), 2005 WL 1802230, at *2 (D. Conn. Jul. 27, 2005), and citing *Browdy v. Karpe*, No. 3:00-CV-1866 (CFD), 2004 WL 2203464, at *2 n.3 (D. Conn. Sept. 20, 2004)).

On September 11, 2017, the Government moved for the judgments submitted as exhibits on September 8, 2017 to remain under seal until further order of the Court as they contained "confidential personal identifying information relating to the Petitioner." Government's Sealed Motion to Seal, dated Sept. 11, 2017, ECF No. 10.

On November 2, 2017, Blackmon was released from a halfway house and began serving his five-year term of supervised release. *See* FED. BUREAU OF PRISONS, *Inmate Locator Service*, https://www.bop.gov/inmateloc/ (last visited Aug. 8, 2019); Am. Resp. at 4 n.1; *see also* U.S. Probation Petition for Action Request for Compliance Review Hearing, No. 92-cr-39-3, filed Nov. 1, 2018, ECF No. 286, at "Date Supervision Commenced."

On January 23, 2018, the Court granted the Government's motion to seal.[6] Order, dated Jan. 23, 2018, ECF No. 11.

## II.    STANDARD OF REVIEW

A federal prisoner may challenge his or her sentence under 28 U.S.C. § 2255 "where the sentence (1) was imposed in violation of the U.S. Constitution or the laws of the United States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack." *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004).

In § 2255 proceedings, petitioners bear the burden of proving, by a preponderance of the evidence, that they are entitled to relief. *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000) (citing *Harned v. Henderson*, 588 F.2d 12, 22 (2d Cir. 1978) ("It is, of course, well settled

---

[6] Because these documents are "relevant to the performance of the judicial function and useful in the judicial process" in the Court's decision on this matter, they are judicial documents entitled to a presumption of public access—"without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019). Because there are no grounds for keeping them fully sealed, the Court will direct the Clerk of the Court to unseal these documents, substituting them with versions that have only limited redactions to protect Mr. Blackmon's only true personally identifying information within them (his date of birth).

that in federal habeas corpus proceedings the burden of proving a constitutional claim lies with the petitioner and that the nature of that burden is the customary civil one of a preponderance of the evidence.") (collecting cases)).

Review on a § 2255 motion should be "narrowly limited." *Graziano v. United States,* 83 F.3d 587, 590 (2d Cir. 1996) (citing *United States v. Bokun,* 73 F.3d 8, 12 (2d Cir. 1995)). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States,* 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted). To prevail on a collateral attack, a defendant must show "constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cuoco v. United States,* 208 F.3d 27, 30 (2d Cir. 2000) (quoting *Bokun,* 73 F.3d at 12).

## III.    DISCUSSION

### A. Threshold Issues

#### 1. Mootness

Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 501 (2006); *see also Oneida Indian Nation of Wis. v. State of N.Y.,* 732 F.2d 259, 261 (2d Cir. 1984) (a court has "jurisdiction to consider its own jurisdiction").

"It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed." *United States v. Juvenile Male,* 564 U.S. 932, 936 (2011) (citations and internal quotation marks omitted).

"Throughout the litigation, the party seeking relief must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).

In order to receive a sentence reduction or vacation under § 2255, Mr. Blackmon must remain in the custody of the United States for the duration of his case. *See Scanio v. United States,* 37 F.3d 858, 860 (2d Cir. 1994) ("In order to invoke habeas corpus review by a federal court, a petitioner must satisfy the jurisdictional 'in custody' requirement of 28 U.S.C. § 2255.").

Mr. Blackmon first filed this motion in 2016, while incarcerated in a Bureau of Prisons facility. Pet'r's Mot. at 1, 3. Since that time, he has been released from prison and is currently serving his term of supervised release. *See* FED. BUREAU OF PRISONS, *Inmate Locator Service*, https://www.bop.gov/inmateloc/ (last visited Aug. 8, 2019); Am. Resp. at 4 n.1; *see also* U.S. Probation Petition for Action Request for Compliance Review Hearing, No. 92-cr-39-3, filed Nov. 1, 2018, ECF No. 286, at "Date Supervision Commenced."

A person serving a term of supervised release remains "in custody" for the purposes of a motion under 28 U.S.C. § 2255. *Earley v. Murray,* 451 F.3d 71, 75 (2d Cir. 2006) ("Post-release supervision, admitting the possibility of revocation and additional jail time, is considered to be 'in custody.'"); *cf. Scanio,* 37 F.3d at 860 ("Because in the instant matter Scanio filed his habeas petition on November 29, 1993, three years after his term of supervised release expired, we find that at the time of the filing, he was not 'in custody.'"); *see also Jones v. Cunningham*, 371 U.S. 236, 243 (1963) ("While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the 'custody' of the members of the Virginia Parole Board within the meaning of the habeas corpus statute"); *Nowakowski v. New York*, 835 F.3d 210, 216 (2d Cir. 2016) ("The

Courts of Appeals, including ours, have recognized that a variety of nonconfinement restraints on liberty satisfy that custodial requirement.") (collecting cases).

Because Mr. Blackmon is currently serving his term of supervised release, he remains in custody, and any reduction in his sentence could provide relief by reducing his term of supervised release. *See Earley*, 451 F.3d at 75; Am. Resp. at 4 n. 1. The Court therefore finds that his case is not moot on account of his release from prison. *See Spencer*, 523 U.S. at 7 ("The District Court's conclusion that Spencer's release from prison caused his petition to be moot because it no longer satisfied the 'in custody' requirement of the habeas statute was in error.").

### 2. Timeliness

The Government argues that Mr. Blackmon's motion is untimely because it is "premature in asserting rights that the Supreme Court has not yet recognized in extending *Johnson*." Am. Resp. at 8 ("At present, the Supreme Court itself simply has not extended *Johnson* to make mandatory guideline provisions subject to vagueness challenges and declare the residual clause of the mandatory guidelines to be unconstitutionally vague").

The Court disagrees.

28 U.S.C. § 2255 requires that "a panel of the appropriate court of appeals" certify a successive motion through the process laid out in 28 U.S.C. § 2244. 28 U.S.C. § 2255(h). The Court of Appeals may authorize the filing of a second or successive application "only if it determines that the application makes a prima facie showing that the application satisfies the requirements of [28 U.S.C. § 2244(b)]." 28 U.S.C. § 2244(b)(3)(C). 28 U.S.C. § 2244 requires that "a claim presented in a second or successive habeas corpus application . . . that was not presented in a prior application . . . be dismissed unless the applicant shows that the claim relies

on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable[.]" 28 U.S.C. § 2244(b)(2).

Section 2244, by its terms, thus does not require that the claim necessarily be a correct statement of law, only that the claim relies on a newly available, retroactively applicable rule of constitutional law. *See id.*; *Blow v. United States*, 829 F.3d 170, 172 (2d Cir. 2016) ("A prima facie showing is not a particularly high standard. An application need only show sufficient likelihood of satisfying the strict standards of § 2255 to warrant a fuller exploration by the district court.") (quoting *Bell v. United States*, 296 F.3d 127, 128 (2d Cir. 2002)); *see also Vargas v. United States*, Nos. 16-2112 (L), 16-2458 (Con), & 16-2698 (Con), 2017 WL 3699225, at *1 (2d Cir. May 8, 2017) (granting leave to file a successive § 2255 motion because "*Beckles* did not clearly foreclose the argument that" the residual clause of the mandatory Guidelines was void for vagueness).

To bring a timely challenge based on *Johnson*, Mr. Blackmon thus had to (1) file his motion within one year of the decision in *Johnson*, and (2) seek authorization from the Second Circuit to proceed with his petition. *See* 28 U.S.C. § 2255.

*Johnson* announced a new rule of constitutional law on June 26, 2015, and *Welch* made *Johnson's* holding retroactive to cases on collateral review. *Johnson,* 135 S. Ct. at 2551; *Welch*, 136 S. Ct. at 1268. Mr. Blackmon moved to vacate, set aside, or reduce his sentence on June 26, 2016, which falls within one year of *Johnson* and satisfies the one-year "period of limitation" specified by 28 U.S.C. § 2255(f). 28 U.S.C. § 2255(f); *see Johnson*, 135 S. Ct. at 2551; Pet'r's Mot. at 1.

The Second Circuit granted Mr. Blackmon leave to file his motion on August 16, 2016. Mandate. In certifying Mr. Blackmon's successive motion, the Second Circuit recognized that

Mr. Blackmon made a *prima facie* showing that his case relied on the newly announced rule in *Johnson*; it did not determine whether Blackmon's claim was legally correct or incorrect. *See Tyler v. Cain,* 533 U.S. 656, 664 (2001) ("The stringent time limit" of habeas motions "suggests that the courts of appeals do not have to engage in the difficult legal analysis that can be required to determine questions of retroactivity in the first place."); Mandate; Pet'r's Mem. at 2.

Because Mr. Blackmon filed his petition within a year of *Johnson*,[7] and because the Second Circuit specifically granted Mr. Blackmon leave to proceed with this petition, the Court holds that Mr. Blackmon's motion is timely, absent any contrary indication or order from the Second Circuit.[8] *See Puricelli v. Argentina*, 797 F.3d 213, 218 (2d Cir. 2015) ("A district court must follow the mandate issued by an appellate court.") (collecting Supreme Court and Second Circuit cases); *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012) ("This mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate.") (quoting *Yick Man Mui,* 614 F.3d 50, 53 (2d Cir. 2010)); *see also United States v.*

---

[7] The Second Circuit has not explicitly addressed whether a petitioner, such as Mr. Blackmon, may in fact rely on the right recognized by *Johnson* to challenge identical language in the mandatory Sentencing Guidelines. Indeed, in a recent summary order, the Second Circuit affirmed a district court's denial of a *Johnson*-based challenge to the mandatory Sentencing Guidelines but did not decide whether the petitioner's challenge was timely—declining to address the district court's holding that the petition was untimely and determining the petition failed on the merits because the predicate offense he challenged was categorically a crime of violence. *See Foley v. United States*, 768 F. App'x 41, 42 (2d Cir. 2019) ("Even assuming Foley's petition is timely, he cannot succeed on the merits . . . . While Foley was sentenced under the Guidelines, the relevant language of the Guidelines is identical to the relevant language in ACCA. Foley's convictions for first degree robbery in Connecticut therefore under *Shabazz* qualify as crimes of violence under the Guidelines, and thus even assuming his petition is timely it could not be granted.") (citing *Shabazz v. United States*, 912 F.3d 73 (2019); *United States v. Gray*, 535 F.3d 128, 130 (2d Cir. 2008)); *United States v. Foley*, Nos. 2:1-cr-34 & 2:2-cr-40, 2018 WL 1626111, at *6 (D. Vt. Mar. 30, 2018) ("Contrary to Defendant's assertion, the Supreme Court has not extended the reasoning of *Johnson* to make mandatory guideline provisions subject to vagueness challenges or declared the residual clause in the mandatory career offender guideline unconstitutionally vague. Defendant's petition is thus premature and fails to satisfy the requirements of § 2255(f)(3) . . . . As a result, his petition to vacate his sentence is DISMISSED as untimely . . . . Assuming *arguendo* that Defendant's petition was not untimely, it must be denied on its merits . . . .").

[8] The Ninth Circuit noted that "[t]he fact that our court previously granted Blackstone permission to file a second or successive motion does not preclude our consideration of the [timeliness] issue on the merits." *Blackstone*, 903 F.3d at 1027 n.3.

*Bryce,* 287 F.3d 249, 253 (2d Cir. 2002) ("To determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specifics of the dictates of the remand order as well as the broader spirit of the mandate.") (quoting *United States v. Ben Zvi,* 242 F.3d 89, 95 (2d Cir. 2001)).

### 3. Necessity of Hearing

When a prisoner files a habeas motion under 28 U.S.C. § 2255, the statute requires a court to grant a hearing in order to "determine the issues and make findings of fact and conclusions of law." 28 U.S.C. § 2255(b). Where no material facts are in dispute, however, the court may use its discretion to rely on the written record submitted to the court rather than hold an in-person hearing to decide the applicable questions of law. *See Chang v. United States*, 259 F.3d 79, 86 (2d Cir. 2001) (affirming district court's decision to rely on the submitted written record to decide case); *see also United States v. Aiello,* 814 F.2d 109, 114 (2d Cir. 1987) ("[S]uch inquiry may take the form of an evidentiary hearing, or the district court, in its discretion, may utilize any of the habeas rules designed to supplement the record without the necessity of conducting a full-blown evidentiary hearing."); *cf. Puglisi v. United States,* 586 F.3d 209, 213 (2d Cir. 2013) ("The procedure for determining whether a hearing is necessary is in part analogous to . . . a summary judgment proceeding . . . . If material facts are in dispute, a hearing should usually be held and relevant findings of fact made.").

In his motion, Mr. Blackmon alleges only questions of law as to whether *Johnson* invalidates the residual clause of the Sentencing Guidelines' career offender definition, under which Blackmon impliedly claims to have been sentenced. *See* Pet'r's Mem. at 1–2. Moreover, neither party has requested an evidentiary hearing. *See, e.g.*, Pet'r's Mem.; Am. Resp.

The only material fact that is in dispute—as will be discussed below—is whether Judge Burns applied the residual clause in sentencing Mr. Blackmon. But that is a factual dispute that Mr. Blackmon himself argues can be decided without a hearing, based on a "rule-out" analysis, as outlined below. *See* Pet'r's Mot at 2–3; *see infra* at Part III.B. In other words, there are no credibility issues involved in this factual determination requiring an evidentiary hearing. *Cf. Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013) ("To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief.") (citations omitted).

Because no material facts that would require an evidentiary hearing are in dispute, the Court exercises its discretion and decides Mr. Blackmon's motion based on the parties' written submissions and the record before the Court.[9] *See Chang*, 250 F.3d at 86 ("It was, therefore, within the district court's discretion to choose a middle road that avoided the delay, the needless expenditure of judicial resources, [and] the burden on trial counsel and the government . . . that would have resulted from a full testimonial hearing."); *Newfield v. United States,* 565 F.2d 203, 208 (2d Cir. 1977) ("Nevertheless, where, as here, the § 2255 motion is supported solely by documents long in the possession of the appellate or trial court, where there is no assertion whatsoever of new information, let alone no setting forth of 'detailed and controverted issues of fact,' . . . we cannot agree that the trial court abused its discretion by denying without a hearing two § 2255 motions"); *see also Burkhardt v. Bradt,* No. 12-CV-1919 (ADS), 2016 WL 7017363, at *11 (E.D.N.Y. Dec. 1, 2016) (holding that "a full-fledged evidentiary hearing is unnecessary" because the written record was sufficient for deciding the motion, even where the current judge

---

[9] The Court also exercises its discretion to rule on the petition without oral argument. D. Conn. L. Civ. R. 7(a)(3) ("[T]he Court may, in its discretion, rule on any motion without oral argument."); *see generally Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (recognizing a district court's inherent authority to manage its docket "with a "view toward the efficient and expedient resolution of cases").

did not try the underlying case); *Glynn v. United States*, Nos. 12 Civ. 4571 (JSR)(HBP) & 06 Cr. 580 (JSR), 2015 WL 5567036, at *7 (S.D.N.Y. Aug. 20, 2015) (holding an evidentiary hearing to be unnecessary because "the issues raised by petitioner can be resolved on the basis of the parties' written submissions[,]" even where the current judge did not try the underlying case).

### B. Career Offender Designation

In § 2255 proceedings, petitioners bear the burden of proving that they have a valid constitutional claim. *Triana,* 205 F.3d at 40. Mr. Blackmon therefore bears the burden of proof in demonstrating that he must have been sentenced under the residual clause of the Armed Career Criminal Act.[10] *See id.*; *see also Villanueva v. United States*, 191 F. Supp. 3d 178, 184 (D. Conn. 2016) ("[T]he first task before the court is to determine whether Villanueva has proven by a preponderance of the evidence that he was sentenced under the Residual Clause [of the Armed Career Criminal Act].") (citing *Triana*, 205 F.3d at 40), *rev'd on other grounds*, 893 F.3d 123 (2d Cir. 2018); *United States v. Maldonado*, 636 F. App'x 807, 810 (2d Cir. 2016) ("Yet for New York's offense of attempted burglary in the third degree to constitute a 'crime of violence,' it must fall within the broad strictures of Guideline § 4B1.2(a)(2)'s residual clause—the clause bearing precisely the same language that the *Johnson* Court invalidated for vagueness.").

In other words, before the Court can reach the merits of any constitutional challenge to the residual clause, Mr. Blackmon must show that it is more likely than not that his sentence was enhanced because the residual clause was actually applied by Judge Burns when she found he was a career offender subject to a mandatory higher guideline range. *See Wiggan v. United*

---

[10] While not dispositive here, "[c]ourts have taken different approaches . . . in evaluating a petitioner's showing as to whether he was sentenced under the residual clause" of the Armed Career Criminal Act. *See Brunstorff v. United States*, No. 3:16-cv-912 (MPS), 2017 WL 5906611, at *5–6 (D. Conn. Nov. 30, 2017) (collecting cases reviewing § 2255 petitions based on residual clause of ACCA, including those where courts apply lower burdens because it "would be unfair to require petitioners to glean from a record facts to make a showing that the sentencing court relied on a particular clause, where the court itself was not required to make clear which clause it was relying on.").

*States*, No. 3:15-cv-447 (SRU), 2016 WL 4179838, at *2, *7 (D. Conn. Aug. 5, 2016) ("The petitioner bears the burden of proving, by a preponderance of the evidence, that he is entitled to relief . . . . The Court's holding in *Welch* requires me to evaluate whether Wiggan was sentenced under the now-unconstitutional Residual Clause. Wiggan's 180-month sentence will be unconstitutional if I determine that he was sentenced based on three prior convictions that failed to qualify, categorically, under either the Elements Clause or Enumerated Felonies Clause.") (in context of post-*Johnson* ACCA case).

Both Mr. Blackmon and the Government agree that the sentencing record does not provide any affirmative evidence that Judge Burns was using the residual clause when she determined Mr. Blackmon was a career offender.

But Mr. Blackmon argues that he must have been sentenced under the residual clause of the Guidelines' career offender definition because the two predicate offenses used to support the career offender designation could not have been considered "crimes of violence" under either the force clause or the enumerated clause. *See* Pet'r's Mem. at 1–2, 13–14. As a result, he argues the Court can rule out the possibility that the predicate offenses were deemed crimes of violence under either of these clauses, leaving only one explanation: that they were determined to be crimes of violence through application of the residual clause. Pet'r's Mot. at 3.

The Court disagrees.

For the reasons explained below, both of Mr. Blackmon's prior convictions could have been found by Judge Burns to constitute "crimes of violence," either because they matched offenses specifically enumerated in the commentary to the Sentencing Guidelines or because they would qualify as crimes of violence under the force clause. Accordingly, Mr. Blackmon cannot demonstrate that it is more likely than not that his sentence enhancement was based on

the residual clause, and the Court thus does not reach the issue of whether the residual clause is void for vagueness.[11]

### 1. Manslaughter in the First Degree

The then applicable 1992 Sentencing Guidelines provide commentary as to the definition of a "crime of violence" that specifies certain offenses as "crimes of violence," in addition to those listed in the enumerated clause. *See* U.S. SENTENCING COMM'N GUIDELINES MANUAL § 4B1.2(1) cmt. n.2 (eff. Nov. 1, 1992 to Oct. 31, 1993). These "[c]ommentary provisions must be given 'controlling weight' unless they: (1) conflict with a federal statute, (2) violate the Constitution, or (3) are plainly erroneous or inconsistent with the Guidelines provisions they purport to interpret." *United States v. Jones*, 878 F.3d 10, 18 (2d Cir. 2017) (quoting *Stinson v. United States,* 508 U.S. 36, 45 (1993)).

The commentary enumerated manslaughter as a crime of violence. U.S. SENTENCING COMM'N GUIDELINES MANUAL § 4B1.2(1) cmt. n.2 (eff. Nov. 1, 1992 to Oct. 31, 1993) ("Crime of violence includes . . . manslaughter . . . .").

Nevertheless, Mr. Blackmon argues that his conviction for first degree manslaughter could not have been a "crime of violence." *See* Pet'r's Mem. at 14 ("Therefore, force is not a legal element of the offense and manslaughter could not have supported a career offender determination.").

The Court disagrees.

The Connecticut statute for manslaughter in the first degree provides that:

---

[11] The Second Circuit recently held that a void-for-vagueness challenge to the residual clause of the Sentencing Guidelines is "foreclosed by the Supreme Court's recent decision in [*Beckles*], in which the Court concluded that the Sentencing Guidelines are not subject to void-for-vagueness challenges and upheld the career offender Guidelines." *United States v. Hendricks,* 921 F.3d 320, 332 (2d Cir. 2019). But that holding was in the context of a challenge to the advisory Sentencing Guidelines. *See id.* at 325 ("As a result of [defendant's] status as a 'career offender,' his advisory Guidelines range was 360 months to life imprisonment.").

> A person is guilty of manslaughter in the first degree when: (1) [w]ith intent to cause serious physical injury to another person, he causes the death of such person or a third person; or (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he committed the proscribed act or acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proven in any prosecution initiated under this subsection; or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person.

CONN. GEN. STAT. § 53a-55 (eff. Jul. 8, 1983 to present).

In determining whether a petitioner's prior conviction constitutes a crime of violence under the enumerated clause of the career offender definition or its commentary, courts use the categorical approach. *Mathis v. United States,* 136 S. Ct. 2243, 2248 (2016) ("To determine whether a prior conviction is for generic burglary (or other listed crime) courts apply what is known as the categorical approach. They focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case.") (citing *Taylor*, 495 U.S. at 600–01); *Jones*, 878 F.3d at 18 ("Where the basis for categorizing a prior conviction as a crime of violence is that the offense is specifically enumerated as such in the Career Offender Guideline or its commentary, [courts] undertake the categorical approach by comparing the state statute to the generic definition of the offense.") (citing *United States v. Walker*, 595 F.3d 441, 445–46 (2d Cir. 2010)).

Under the categorical approach, courts compare the elements of the statute under which the defendant was convicted with a generic definition of the offense, without regard to the facts of the petitioner's specific case. *Jones*, 878 F.3d at 16 ("Under the categorical approach we must

confine our inquiry to the legal elements of the state statute without at all considering the facts of the underlying crime."). If the elements of the petitioner's prior offense are narrower than or the same as those of the generic offense, then the conviction qualifies as a crime of violence and can serve as a predicate offense for a sentencing enhancement. *Descamps v. United States*, 570 U.S. 254, 257 (2013).

But where the "state statute . . . criminalize[s] multiple acts in the alternative[,]" or "sets out one or more elements of the offense in the alternative[,]" the statute is divisible, and courts must use the "modified categorical approach" to determine whether the prior conviction qualifies as a crime of violence under the enumerated clause or the commentary. *Jones*, 878 F.3d at 16; *Descamps*, 570 U.S. at 257. Under this approach, courts may consult a limited subset of documents to determine whether the petitioner's prior guilty plea "necessarily admitted facts demonstrating that his conviction was for a crime of violence." *United States v. Reyes,* 691 F.3d 453, 458 (2d Cir. 2012); *see also Mathis,* 136 S. Ct. at 2249 (specifying "the indictment, jury instructions, [and] plea agreement and colloquy" as permissible documents within the subset when a defendant pled guilty to the prior offense in question) (citing *Shepard v. United States,* 544 U.S. 13, 26 (2005); *Taylor v. United States*, 495 U.S. 575, 602 (1990)).

If the offense cannot be determined from court documents, then courts may "look to the least of the acts proscribed by the statute to see if it qualifies as a predicate offense for the career offender enhancement." *Jones*, 878 F.3d at 17 (citing *Johnson v. United States*, 559 U.S. 133, 137 (2010)) (internal quotation marks omitted). Courts then compare the elements of that lesser offense to those of the generic definition. *See id.* If the elements of the lesser offense are narrower than or the same as those of the generic definition, then any conviction under the statute categorically qualifies as a crime of violence that can serve as a predicate offense for a

sentencing enhancement. *See id.*; *United States v. Castillo*, 896 F.3d 141, 154 (2d Cir. 2018) ("In sum, we conclude that manslaughter in the first degree under New York law, N.Y. Penal Law § 125.20(1), is narrower than the generic definition of 'manslaughter.' Castillo's 2006 Manslaughter Conviction under that provision therefore qualified as a 'crime of violence' under the enumerated offenses in Application Note 1 of the commentary to Section 4B1.2 of the November 2015 Guidelines.").

The Second Circuit has generically defined manslaughter as "the unlawful killing of another human being recklessly." *Castillo*, 896 F.3d at 152.

The judgment mittimus for Mr. Blackmon's manslaughter conviction indicates that he was convicted of manslaughter in the first degree under Connecticut General Statute § 53a-55(a)(1).[12] *See* Manslaughter Judgment, at "First Count – Statute No." A conviction under that specific subsection requires a finding that Mr. Blackmon caused the death of another person "with intent to cause serious physical injury." CONN. GEN. STAT. 53a-55(a)(1).

And Mr. Blackmon has not disputed that he was convicted of manslaughter in the first degree under the state's first-degree manslaughter statute, CONN. GEN. STAT. § 53a-55. *See* Pet'r's Mem. at 3 ("The District Court found Petitioner to be a career offender after adopting the finding of the presentence report, which indicated that he had at least two prior convictions that qualified as "crimes of violence" necessary to support the career offender enhancement, one for second-degree assault, and one for first-degree manslaughter."). He has, moreover, only

---

[12] The state police record submitted by the Government, which is unauthenticated, may not be used when attempting to determine the subsection of conviction for purposes of determining a sentencing enhancement under the modified categorical approach, as the Government has acknowledged. *See* Am. Resp. at 23 n.7; *see also Shepard*, 544 U.S. at 16 ("The question here is whether a sentencing court can look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary. We hold that it may not, and that a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.").

indirectly suggested that he was not convicted under subsection (a)(1). *See id.* at 14 (citing § 53a-55 generally, but more specifically citing state's model jury instruction for CONN. GEN. STAT. § 53a-55(a)(3), manslaughter in the first degree committed with reckless indifference to human life, to argue that force was "not a legal element of the offense" of conviction).

Accordingly, the Court will take judicial notice of the judgment mittimus, and concludes that it is a true and accurate copy of Mr. Blackmon's state court judgment of conviction for manslaughter. *See, e.g.*, *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) ("Island asserts that, because Microsoft submitted to the district court only copies of its federal copyright registrations, and did not swear to the authenticity of those copies, the summary judgment record does not support a finding of copyright ownership. But under Rule 201(b) of the Federal Rules of Evidence, a court may take judicial notice of facts that are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' The district court was entitled to take judicial notice of Microsoft's federal copyright registrations, as published in the Copyright Office's registry.").

But the Court declines to rely on a judicially noticed document alone as proof of the specific subsection to which Mr. Blackmon pleaded guilty—particularly given the lack of any authentication, as well as the lack of other corroborating and admissible documentary evidence that might definitively establish the precise subsection of conviction.

The Court therefore finds that the record before it does not contain the subsection to which Mr. Blackmon pleaded guilty and was convicted. Accordingly, the Court may "look to the least of the acts proscribed by the statute to see if it qualifies as a predicate offense for the career offender enhancement." *Jones*, 878 F.3d at 17 (citing *Johnson*, 559 U.S. at 137).

Section 53a-55(a)(3) requires the lowest level of culpability of any subsection in the statute: "extreme indifference to human life." CONN. GEN. STAT. § 53a-55(a)(3). This level of mens rea "is one step further towards culpability than the reckless conduct of second degree manslaughter." CONN. GEN. STAT. § 53a-55, Commission Comment (1971); *see also State v. Spates*, 176 Conn. 227, 236 (1978) (no error where "the court instructed the jury as to the meaning of 'extreme indifference to human life': 'Mere carelessness is not enough, nor is ordinary recklessness sufficient. The law here requires extreme indifference to human life.'"); *State v. Hallowell*, 61 Conn. App. 463, 468 (2001) ("Some guidance, as to the level of indifference the legislature fairly perceived is gleaned by its designating the indifference in § 53a-55(a)(3) by the adjective extreme. That adjective has been defined to mean existing in the highest possible degree . . . . It is synonymous with excessive."); *State v. Pitt*, 28 Conn. App. 825, 830 (1992) (holding "extreme indifference to human life" to be an "aggravated form of recklessness"). Thus, the "least of the acts proscribed by" Connecticut's first-degree manslaughter statute requires a higher level of culpability than the generic definition, which requires only recklessness. *Jones,* 878 F.3d at 17; *compare* CONN. GEN. STAT. § 53a-55 *with Castillo*, 896 F.3d at 152.

Thus, if Mr. Blackmon had been convicted for the "least of the acts" under the first-degree manslaughter statute, under that subsection, his offense would still qualify as a crime of violence under the Second Circuit's generic definition of manslaughter. Connecticut's definition of manslaughter in the first degree is narrower than the generic definition. A conviction under

that statute therefore categorically qualifies as a crime of violence under the commentary to the Sentencing Guidelines' career offender provision.[13]

Accordingly, the Court cannot conclude that Judge Burns applied the residual clause, when determining this conviction qualified as a crime of violence, as it is equally likely that determination was made using the enumerated offenses in the commentary.

## 2. Assault in the Second Degree with a Firearm

The 1992 Sentencing Guidelines permitted courts to find a prior conviction was a "crime of violence," if the offense of conviction "has as an element the use, attempted use, or threatened use of physical force[14] against the person of another." *See* U.S. SENTENCING COMM'N GUIDELINES MANUAL § 4B1.2(1)(i) (eff. Nov. 1, 1992 to Oct. 31, 1993).

Mr. Blackmon argues that his offense of conviction could not have been found to be a crime of violence by Judge Burns under the force clause because it did not contain such an element. *See* Pet'r's Mem. at 13 ("Likewise, assault does not qualify as a 'crime of violence' under the [force] clause because the pertinent state statute and law interpreting that statute

---

[13] *See Moore*, 916 F.3d at 239 ("Thus, because the 'by force and violence, or by intimidation' clause of the federal bank robbery statute 'is the same as, or narrower than, the relevant generic offense' of robbery, it constitutes a crime of violence subject to U.S.S.G. 4B1.2's sentencing enhancement."); *Castillo,* 896 F.3d at 154 ("[W]e conclude that manslaughter in the first degree under New York law, N.Y. Penal Law § 125.20(1), is narrower than the generic definition of 'manslaughter'" and "therefore qualifie[s] as a crime of violence under the enumerated offenses in Application Note 1 of the commentary to Section 4B1.2 of the November 2015 Guidelines."); *Jones,* 878 F.3d at 19 (upholding district court's sentencing enhancement under the Guidelines' career offender provision because "New York's definition of robbery necessarily falls within the scope of generic robbery as set forth in the commentary to U.S.S.G. § 4B1.2(a)."); *see also Coe v. United States,* Nos. 3:16-cv-1031 (VLB), 3:00-cr-127, 2018 WL 5016994, at *7 (D. Conn. Oct. 15, 2018) ("Because the crime of robbery was specifically listed as a crime of violence in the commentary to § 4B1.2, the Court concludes that the residual clause was not void for vagueness as applied to Mr. Coe."); *Tobias v. United States,* No. 3:16-cv-1092 (MPS), 2017 WL 3585336, at *5 (D. Conn. Aug. 18, 2017) ("Here, with robbery specifically listed as a crime of violence in the binding commentary, it cannot be said that Mr. Tobias lacked 'fair notice' that he could be subject to the career offender provision based on his two robbery convictions, or that the provision invited 'arbitrary enforcement' with respect to him.").

[14] In the context of the Armed Career Criminal Act, the Supreme Court has defined "physical force" to mean "violent force—i.e., force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 134. The Second Circuit has adopted this same definition with respect to the Guidelines. *See Moore*, 916 F.3d at 241; *see also United States v. Dupree*, 767 F. App'x 181, 185 (2d Cir. 2019).

indicate that the prior conviction does not rest on an offense that has as an element the use, attempted use, or threat of violent physical force or even necessarily require such force."). As a result, he maintains that this conviction must have been found to be a crime of violence by reference to the residual clause.

The Court disagrees.

The statute under which Mr. Blackmon was convicted, assault in the second degree with a firearm, provides that:

> a person is guilty of assault in the second degree with a firearm when he commits assault in the second degree as provided in section 53a-60, and in the commission of such offense he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, machine gun, shotgun, rifle, or other firearm. No person shall be found guilty of assault in the second degree and assault in the second degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information.

CONN. GEN. STAT. § 53a-60a(a) (eff. June 24, 1975 to present).[15]

This offense thus requires two findings: (1) that the defendant committed assault in the second degree, as defined in Connecticut General Statute § 53a-60; and (2) that the defendant used a firearm, threatened to use of a firearm, or represented that he was armed with a firearm. *See* CONN. GEN. STAT. § 53a-60a(a). The offense thereby incorporated Connecticut's statute for assault in the second degree, which at the time provided five different methods of committing assault in the second degree:

> (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a

---

[15] The Connecticut General Assembly recently revised the second subsection of the statute, CONN. GEN. STAT. § 53a-60a(b), in an amendment effective as of October 1, 2019. *See* Conn. Pub. Act No. 19-132 (2019 Reg. Sess.). This amendment, however, has no effect on the substantive basis for liability under CONN. GEN. STAT. § 53a-60a(a).

deadly weapon or dangerous instrument; or (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or dangerous instrument; or (4) for a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness, or other physical impairment or injury to another person by administering to such person, without his consent, a drug, substance or preparation capable of producing the same; or (5) he is in the custody of the commissioner of correction, confined in any institution or facility of the department of correction, or is a parolee from a correction institution and with intent to cause physical injury to an employee of the department of correction or an employee or member of the board of parole, he causes physical injury to such employee or member.

CONN. GEN. STAT. § 53a-60 (eff. May 25, 1984 to June 23, 1993).

Mr. Blackmon argues that because at least one subsection of Connecticut's non-firearm second-degree assault statute, § 53a-60(a)(3), does not qualify as a crime of violence, his conviction for assault in the second degree with a firearm is also not categorically a crime of violence. Pet'r's Mem. at 13 (citing *Moreno v. United States*, 821 F.3d 223, 228 (2d Cir. 2016)).

But Mr. Blackmon pleaded guilty to § 53a-60a, assault in the second degree with a firearm. Mr. Blackmon does not directly dispute this, but instead refers to his conviction generally as one for "second-degree assault." *See* Pet'r's Mem. at 13–14. But the actual offense of conviction, assault in the second degree with a firearm, has been well-established since the time he was sentenced, and was previously admitted by Mr. Blackmon in the course of his first appeal to the Second Circuit. *See* Am. Resp. at 5 (noting that the presentence report's factual findings, including the finding that he had been convicted of assault in the second degree with a firearm, were adopted by Judge Burns) (citing Presentence Report); *Jackson*, 60 F.3d at 131 ("In this case, Blackmon was over eighteen years of age and had two prior convictions, one for manslaughter and one for assault in the second degree with a firearm. As a result, he satisfied the first and third elements of § 4B1.1, a fact that Blackmon does not contest."). The clear indication

on the judgment mittimus that Mr. Blackmon was convicted of assault in the second degree with a firearm only underscores this fact.[16] *See* Assault Judgment.

In any event, to be convicted under § 53a-60a, a court must find two elements: (1) the commission of assault in the second degree; and (2) that the defendant either: (a) used a firearm; (b) was armed with a firearm and threatened to use a firearm; or (c) was armed with a firearm and implicitly threatened, through words or conduct indicating he or she was armed, to use a firearm. *See* CONN. GEN. STAT. § 53a-60a; CONN. JUDICIAL BRANCH, CRIM. JURY INSTRUCTIONS, § 6.1-11.[17]

Any conviction under this statute thus requires a minimum finding of the use or threatened use of physical force, by means of a firearm, while committing an assault in the second degree. Its text thus plainly matches the 1992 Sentencing Guidelines' definition of a "crime of violence." The Court therefore cannot rule out that this conviction was found to be a crime of violence under the force clause.[18]

---

[16] For substantially the same reasons articulated with respect to the manslaughter judgment, the Court takes judicial notice of the assault judgment as a true and accurate copy of Mr. Blackmon's state court judgment of conviction with respect to his assault in the second degree with a firearm charge. But in this case, the judgment mittimus does not reveal the precise subsection of the statute he was convicted of. *See* Assault Judgment, at "First Count-Statute No." ("Assault, 2nd w/Firearm 53a-60a").

[17] These jury instructions were "compiled by the Criminal Jury Instruction Committee and . . . intended as a guide for judges and attorneys in constructing charges and requests to charge and as a general reference to criminal offenses and their elements," and are available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf. *See* CONN. JUDICIAL BRANCH, CRIM. JURY INSTRUCTIONS at 2 ("About These Instructions").

[18] While not addressed by Mr. Blackmon, the Court also cannot rule out that Judge Burns found Mr. Blackmon's conviction for assault in the second degree with a firearm to be a crime of violence by reference to the commentary, as "aggravated assault," an offense enumerated in the commentary as a crime of violence. U.S. SENTENCING COMM'N GUIDELINES MANUAL § 4B1.2(1) cmt. n.2 (eff. Nov. 1, 1992 to Oct. 31, 1993).

The Second Circuit has not announced a generic definition of aggravated assault. The Fifth Circuit, however, defines "aggravated assault" as an assault that "involves aggravating factors such as use of a deadly weapon," *United States v. Fierro-Reyna,* 466 F.3d 324, 329 (5th Cir. 2006). Black's Law Dictionary defines "aggravated assault" to mean "criminal assault accompanied by circumstances that make it more severe, such as . . . the intent to cause serious bodily injury, esp. by using a deadly weapon," *Aggravated Assault,* BLACK'S LAW DICTIONARY (9th ed. 2009). The Model Penal Code defines "aggravated assault" to include conduct that "attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon." MODEL PENAL CODE § 211.1(2)(a)-(b).

(Continued . . . )

Because Mr. Blackmon has not proven, by a preponderance of the evidence, that at least one of his two predicate offenses was found to be a crime of violence under the residual clause, he has not met his burden of showing that he was sentenced under the residual clause.

As Mr. Blackmon has not shown that the residual clause is void for vagueness as applied to him, the Court does not reach the issue of whether *Johnson*'s holding otherwise renders the residual clause of the mandatory Guidelines void for vagueness. *See Coe*, 2018 WL 5016994, at *9 ("Because the Court rejects Mr. Coe's claim on the merits, it need not address the question of timeliness under § 2255(f), the question of whether the pre-*Booker* mandatory Guidelines are subject to a vagueness challenge, or whether the residual clause of the pre-*Booker* Guidelines is void for vagueness in other contexts.").

Moreover, even if Mr. Blackmon had met his burden of showing he was sentenced under the residual clause, the analysis above indicates that such sentencing was harmless error, as (1) manslaughter is enumerated in the commentary, and (2) assault in the second degree with a firearm is a crime of violence under the force clause. *See United States v. Hill,* 890 F.3d 51, 56

---

The Connecticut Supreme Court also has recognized the use of a deadly weapon as an "aggravating factor" in cases of assault. *State v. LaFleur,* 307 Conn. 115, 131 (2012) ("[T]he use or threatened use of a 'dangerous instrument' as an aggravating factor" elevates "simple robberies" and assaults "to more severe crimes subject to more stringent penalties.").

When Connecticut adopted its new penal code in 1969, it repealed the offense "aggravated assault," CONN. GEN. STAT. § 53-16 (eff. May 23, 1961 to Oct. 1, 1971), replacing it with Connecticut General Statutes §§ 53a-59–61, which set forth more specific mens rea requirements in line with the Model Penal Code. *Compare* 1961 Conn. Pub. Acts 223, *with* 1969 Conn. Pub. Acts 1578–79.

In 1975, the legislature enacted Connecticut General Statute § 53a-60a, therein instituting a mandatory minimum prison sentence for assault in the second degree when that offense was committed with a firearm, reasoning that the statute's mandatory sentence would help deter crime. CONN. GEN. STAT. § 53a-60a ("Assault in the second degree with a firearm is a class D felony for which one year of the sentence imposed may not be suspended or reduced by the court."); 1975 Conn. Pub. Acts p. 374; 18 S. Proc., Pt. 5, 1975 Sess., p. 2297 ("I do not ordinarily subscribe to the idea of mandating certain types of sentences. But one thing is clear and that is that a jail sentence is a deterrent."); 18 H.R. Proc., Pt. 10, 1975 Sess., p. 4858, 4862 ("We have to make it perfectly clear to the crime element in our society that uses a firearm, which is potentially fifty percent more lethal than any other weapon he can use, that when he goes out with that firearm in his hand, he's in trouble.") (passing bill by vote of 114-1).

Because a conviction under the statute requires the use of a deadly weapon, i.e. a firearm, and mandates a minimum penalty, a conviction under § 53a-60a also could reasonably have been construed by Judge Burns as a conviction for aggravated assault, and thus a crime of violence under the commentary.

(2d Cir. 2018) ("[T]here must be a realistic probability, not a theoretical possibility, that the statute at issue could be applied to conduct that does not constitute a crime of violence.") (quoting *Gonzales v. Duenas-Alvarez,* 549 U.S. 183, 193 (2007) (internal quotation marks omitted); *Coe*, 2018 WL 5016994, at *6 ("Regardless of Judge Burns's exact route, Mr. Coe's federal bank robbery convictions clearly fall within the statute such that it is not vague as applied to Mr. Coe. First, federal bank robbery qualifies as a crime of violence because its elements align with the § 4B1.2 elements clause. Additionally, one cannot reasonably question whether a federal robbery conviction would contribute to a career offender enhancement because the commentary for § 4B1.2 specifically listed robbery as a crime of violence.").[19]

## IV. CONCLUSION

For the reasons explained above, the Court **DENIES** Mr. Blackmon's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 and **DISMISSES** his petition.

Because Mr. Blackmon has not made a "substantial showing" of denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2).

---

[19] Indeed, as the Second Circuit recently held in *Shabazz v. United States*, 923 F.3d 82, 85 (2d Cir. 2019):

> Notwithstanding the fact that the District Court relied on the Residual Clause in originally sentencing Shabazz (as it later concluded that it probably had), there is no reason to consider that error structural. The ACCA enhancement applies under the Force Clause in exactly the same, quantifiable manner that it would have under the Residual Clause. To the extent the court concluded it was required to impose a sentence of at least 15 years' imprisonment, and that ACCA's provisions affecting the calculation of a defendant's offense level and criminal history category applied to Shabazz, that conclusion was correct. Notwithstanding the fact that the court may have relied on a provision of ACCA later determined to be unconstitutional, the same conclusion was compelled by the Force Clause. The court's reliance on the Residual Clause rather than the Force Clause resulted in no prejudice, much less 'fundamental[ ] unfair[ness] or unreliab[ility].' If the district court had based its original sentence on the conclusion that ACCA applied under the Force Clause, there would have been no error at all.

*Shabazz*, 923 F.3d at 85 (quoting *Washington v. Recuenco*, 548 U.S. 212, 219 (2006)).

The Clerk of Court is respectfully directed to unseal ECF Nos. 9 and 10, replacing them with versions of the documents that contain only limited redactions for genuinely personally identifying information, as discussed above, and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 9th day of August, 2019.

        /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge